## Philadelphia Welfare Commissioner's Petition

*Jerome J. Shestack,* first deputy city solicitor, and *Abraham L. Freedman,* city solicitor, for petitioner.

*H. S. Levin,* for respondent.

BOYLE, P. J., April 17, 1953.—This matter is before the court upon a petition of the Commissioner of Public Welfare of the City of Philadelphia (hereinafter called petitioner) praying that all existing orders of the municipal court against the County of Philadelphia for the support of children be amended so that they shall be against the Department of Public Welfare of the City of Philadelphia, instead of the county; and

also that all existing orders of the said court against parents or other persons responsible for the support of children to reimburse the county for such support, shall be amended so that such orders shall be to reimburse the department, instead of the county; and, further, that all future orders of the court for the care of such children be made against the department, and also that all future orders of the court against parents or other persons responsible for the support of children for reimbursement, be made to the department.

The Municipal Court of Philadelphia, sitting as a juvenile court has, for some years, made orders against the County of Philadelphia for the payment of the support and care of delinquent, neglected and dependent children, upon the commitment of such children for foster home or institutional placement and care. In such cases the court has also imposed what are known as reimburse orders upon the parents or other persons responsible for the support and care of the children to the extent that such parents or other persons are financially able to reimburse the county or city for expenditures in this respect.

Petitioner avers that "under the provisions of the Act of June 2, 1933, P. L. 1433, sec. 9, as amended by the Act of May 23, 1947, P. L. 292, sec. 1, the municipal court may impose orders against the county or county institution district for the care and maintenance of children placed in foster homes or institutions"; and also against "parents or other persons responsible for the care and maintenance of said children to reimburse the county or county institution district"; and, further, that "under the provisions of the Act of June 24, 1937, P. L. 2017, the County Institution District of Philadelphia is coterminous with the City of Philadelphia and administered by the Department of Public Welfare of the City of Philadelphia"; that section 5-700 of the Philadelphia Home

Rule Charter provides that the department of public welfare shall have, inter alia, the power and duty to "receive, care for and place dependent, mentally defective, neglected, incorrigible and delinquent children . . . whose support is paid for out of the City Treasury or out of other funds which are administered by the City"; and also that in cases where the department has placed such children, it shall be its duty from time to time to investigate the manner in which they are being cared for.

Petitioner further avers that section 5-700 (*b*) of the charter provides that the department "shall approve or disapprove all bills rendered to the City by the Commonwealth of Pennsylvania for the maintenance of city residents in State institutions for the . . . feeble minded and by private persons for the care of children and adults placed with them"; also that the department transmit to the department of collections, for collection, all accounts due to the city for such care; and, also, that the department has established a program which has for its end the maintenance of relationships with private agencies and homes to insure proper care for the children placed with such agencies or homes.

Petitioner also avers that the department has set up a program to establish relationships between the department and the parents or persons responsible for the maintenance of children to the end that family unity would be preserved and the child retained in a natural family setting, where practicable.

Petitioner also further avers that the department has personnel especially trained to carry out these objectives, and that the city commissioners have not such trained personnel, and asserts that the present system of divided responsibility for enforcement of orders of the municipal court for the support of children is incapable of achieving the objectives and re-

lationships between parents, children and society, and that it is not the most economical employment of the city funds paid out for that purpose.

The Commissioners of the City and County of Philadelphia (hereinafter called respondents) filed their answer to the petition admitting some of the averments of the petition and partially admitting others, averring as to the latter that the respondents are "by Acts of Assembly, the legally designated board or agency to represent the County of Philadelphia in the payment and collection of such orders"; that the Juvenile Court Law of Pennsylvania reposes in this court "discretion . . . to select *either* the county [respondent] or county institution district [petitioner] to pay and/or collect these orders"; that the purpose of the petition is not rehabilitation "but rather to obtain a portion of respondent's budget for administrative and personnel purposes of the department of collections".

The respondents deny that they have jurisdiction over any children and aver that they serve "purely in a fiscal and investigative capacity" and deny that collection of support orders would interfere with the program of the petitioners.

Respondents deny that the petitioner has the personnel trained to enforce payment of reimbursement orders, or that their collection would be more efficiently handled by the petitioner.

Respondents further and finally deny that "petitioner's suggestions embrace a more economical use of the city's funds" and assert that "no matter how petitioner designs or operates its program, collections will have to be under the control of the Department of Collections" of the city government.

Hearings were held in the matter on December 15, 16 and 17, 1952, at which hearings petitioner presented the testimony of witnesses in support of the petition, and respondents against it.

Petitioner introduced the testimony of a number of qualified persons in the child welfare field in the City of Philadelphia in support of its position that the collection and enforcement of the court's orders for the support and maintenance of the children should not be separate and apart from the social aspects inherent in all areas of child welfare.

Petitioner testified that in preparation of his program, he has established relationships with practically all of the child welfare agencies in Philadelphia, and that "there has been a consistent agreement as to the desirability of that type of program for child care in this community".

Commissioner Wise stated:

"I think the biggest protection and the biggest saving to this community will be in terms of reuniting families, getting children back into the family setting or having those most suitable for adoption placed in an adoption setting as expeditiously as possible. Secondly, by virtue of this case work relationship, the continued observation and relationship with that family will not permit a delinquency to mount to a sizable proportion."

We find that there is unanimity among all of the representatives of the child care agencies and of other qualified persons who testified in this proceeding, that the fiscal functions and duties of collecting and enforcing the court orders should be integrated with the welfare functions of petitioner in the performance of the child welfare duties placed upon him, and that this would inure to the benefit of the city.

This court is of opinion that the end sought by petitioner, since it would integrate the fiscal with the rehabilitative functions under one hand, is to be desired, provided that such program would not run counter to existing laws.

What, then, are the facts and the law which should guide the court?

At the time of the filing of the petition, approximately 6,000 children in Philadelphia had been committed by the juvenile court to various agencies for placement in foster homes and institutions, and approximately 5,000 had been committed to the department of public welfare for placement, generally in State mental institutions, or when they were orphans, or for other reasons. Of the aforesaid 6,000 children, appropriate orders have been made for the support and maintenance of such children upon the County of Philadelphia, and at the same time, orders (called reimburse orders) have been made against the parent or parents of such children for the whole or a partial amount of the order imposed upon the county, as aforesaid, based upon the ability of the parents to make such reimbursement.

At the time of the commitment of the aforesaid approximately 5,000 children to the department of public welfare, specific orders were not made against the department, nor were reimburse orders made upon parents, the department having (with some exceptions) made its own arrangements with the parents of the children for reimbursement of the amounts paid by the department in the premises.

In cases where the children have been committed to social agencies, institutions or foster homes, with orders for their support made against the *county*, respondents have been exercising the function of following up the orders imposed by the court upon parents in cases where the parents have fallen into arrears, and they have been performing other functions directed to the payment of such arrearages by the parents.

There was established years ago, in the organization of respondents, a department known as "Children's Agents of the County Commissioners". This department has been continued under respondents who took

office on January 7, 1952. It is manned by a supervisor and chief investigator and 31 employes, some of which employes are workers in the field and others office employes. It is the duty of each man in the field to check each delinquent account in his district, keep a current account of payments made by the delinquent so that he will, at all times, know the amount of individual arrearage. His duty also is to make a report on the financial condition of the person, based upon personal contact with the parents involved, and in other ways to acquaint himself with the financial condition of persons subject to payment of such reimburse orders.

It is not contended that the duties of the present personnel of the children's agents have been unsatisfactorily performed, but it is argued by petitioner that to have the enforcement of some of the court's support orders under the control of the respondents, and the collection and enforcement of others in the department of welfare, a condition of divided responsibility results, which is not an economical system for the good of the city and, also, because respondents regard their functions as limited to the enforcement of the court's orders of reimbursement, without regard to the social implications and problems which petitioner argues are inextricably bound with the whole problem of child placement and welfare. Petitioner also argues that as to the fiscal aspect, the department of public welfare, because of "frequent contact with parents by trained workers, the chances to induce financial responsibility would be greater and the program would thus inure to the city's financial interest".

The power of the court to impose such orders may be found in The Juvenile Court Law of June 2, 1933, P. L. 1433, 11 PS §243, which superseded earlier statutes giving the courts such power, as well as in later legislation, to wit, the Act of June 24, 1937, P. L.

2017, 62 PS §2201, called the County Institution District Law; and also the Act of May 23, 1947, P. L. 292, sec. 1, which is an amendment to section 9 of the Juvenile Court Law, supra.

Section 9 of The Juvenile Court Law, supra, provided that in case of the commitment of a child, the court was empowered to order the county to pay for the support, maintenance and care of the child, and the same section provided that where a child was placed in a suitable family home and the payment of board was required 'the court may direct that such board be paid by the county".

The same section further provided that the county was made directly liable to the person, family, association, society or institution having the care, guidance and control of the child and, also, that the county should have "full recourse to recover the amounts so paid from the persons or poor district liable for the support of such child".

By this act, the *county* had the responsibility for the support and maintenance of children committed by the court where orders were made upon the *county* for such support and maintenance, together with the power to recover the amounts paid by it for the support of such child from the person or poor district liable for the support of such child.

Then the legislature enacted the County Institution District Law of June 24, 1937, P. L. 2017, 62 PS §2201, which act created in each city of the first class, as part of the city government, "an institution district for the care and maintenance of . . . indigent persons and children; prescribing the powers and duties of . . . city departments of public welfare . . . [and] abolishing certain poor districts", etc.

By this act, the term "institution district" meant, inter alia, "a . . . city institution district managed by

. . . the department of public welfare of any city of the first or second class, as the case may be".

The act defined the term "local authorities", inter alia, to be ". . . the department of public welfare of any city of the first or second class".

The act further provided, article II, sec. 201:

"Thereafter, the laws as to the care of dependents shall be administered throughout each city of the first class by the department of public welfare of the city, and each such city shall constitute an institution district for the purposes of this Act. Such district shall not exist as an entity separate and apart from the city but shall be administered as a department of the city government".

Article IV, sec. 401, of the said act provided that the local authorities should have the power and duty, with funds of the institution district or of the city:

"(a) To care for any dependent, having a settlement in the county or city, who is not otherwise cared for; . . .

"(d To contribute moneys to the county to pay all or part of the county cost of maintaining children in foster homes and in institutions and homes for children."

Article IV, sec. 405, of the act provided:

"The local authorities of any institution district shall have the power, and it shall be their duty to place in foster homes or in institutions or homes for children all dependent children who are in, or committed to, their charge, and whose placement and care are not otherwise provided for by law."

Thereafter, the legislature enacted the provisions of the Act of May 23, 1947, P. L. 292, sec. 1. This act is, as we have said, an amendment to section 9 of The Juvenile Court Law of 1933, and must be read in connection with section 201 of article II and section 401 of article IV of the County Institution District Law of

June 24, 1937, P. L. 2017, supra, with particular reference to the hereinbefore recited language of section 201 thereof. The amendment provides as follows:

"In cases where the county or county institution district is responsible for support, maintenance or care of any child or children in any private home, foster home, children's home, or institution whether public or private, the court may order the parents or persons responsible for the education, support, maintenance or care of said child or children to reimburse the county or county institution district for the cost of support, maintenance or care of said child or children. The court shall have power to enforce any such order for support, maintenance or care of such child or children in like manner as courts of quarter sessions, or other courts of record having jurisdiction, may enforce orders for support under the laws of this Commonwealth."*

Counsel for respondents argues that, since the legislature in the amendment of 1947, supra, uses the term "county or county institution district", it used the term "county" because it meant to make it mandatory upon the Municipal Court of Philadelphia to avail itself of an existing children's bureau and not the "inefficient, skeleton-staffed department of welfare".

Respondents argue that "it had to so intend, else as stated in the previous paragraph, it could have com-

---

* The department of public welfare, as it existed prior to January 7, 1952, restricted itself generally to the placement and support of mentally defective children, abandoned children, orphans and others not being cared for under appropriations by city council to the county commissioners.

The court continued to impose orders upon the county, notwithstanding these enactments, because the department of public welfare, as it existed prior to January 7, 1952, at no time petitioned the court to make orders against it; and also because the City Council of Philadelphia continued to make appropriations for such purposes to the then county commissioners, and not to the department of public welfare of the city.

pelled the municipal court to use Welfare by simply using the expression 'county institution district' ".

By such reasoning, it could be said that the opposite is true, viz., that if the legislature had wanted to compel the Municipal Court of Philadelphia "to avail itself of an existing children's bureau", it could have accomplished this object by simply using the expression "county" and not its expression "county *or* county institution district". (Italics supplied).

The argument of respondents that the amendment of 1947, supra, empowered the county commisisoners to control the fiscal problems connected with the placement and care of children, is not convincing.

The provisions of this amendment concern the fiscal aspect of the question and the act itself in its explicit references to such fiscal matters, and to the county institution district, together with the County Institution District Law, clearly shows that the legislature intended the county institution district in Philadelphia (that is, the department of public welfare) to administer all laws relating to child placement, including the fiscal requirements.

While it is true that the County Institution District Law did not expressly, by its terms, grant to the county institution district all of the powers contended for by petitioner, it would seem that the 1947 amendment, supra, to The Juvenile Court Law, gives to county institution districts such powers, and so the Act of 1947 must be construed as affecting a reconciliation of The Juvenile Court Law of 1933 with the County Institution District Law of 1937.

Taking the three acts involved, and construing them together, as should be done, it seems clear that the final result is to substitute the county institution district (that is, the department of welfare in Philadelphia) for the city (former county) commissioners, in the ad-

ministration of the program of maintenance of children committed by the juvenile court.

Counsel for both parties initially suggested that this court has discretion which it might exercise in favor of either contending party.

Respondents in their answer referred to "the discretion reposed in your honorable court to select *either* the county (respondent) or county institution district (petitioner) to pay and/or collect these orders" and, in their brief, argue: "If the municipal court has discretion, it should be exercised in favor of respondents".

If the court has such discretion, then no matter what view of this question may be taken, the court may, with legality, designate either petitioner or respondents to exercise all child welfare functions and perform the duties connected therewith and, if such be the case, the court's discretion should be employed to further the program of the department of public welfare, since such program is directed not only to the reimbursement of the city for its expenditures in the care of children, but to the attempted and much to be desired solution of the social problems existent in all areas of child welfare and, since, in addition, the department of public welfare is the logical agency for the exercise of all such functions and the performance of all related duties in such areas.

It is, therefore, apparent that there was sufficient warrant for a petition by the department of public welfare, as then constituted, praying the court to impose support orders as requested by petitioner in the present case.

When, now, petitioner, the present commissioner of welfare, requests that orders be amended and hereafter made as prayed for in his petition, we must hold that by virtue of the provisions of the County Institution District Law of 1937, and the amendment of 1947, supra, to The Juvenile Court Act, this legislation (aside from

whether the court has discretion to decide in favor of either of the parties) is controlling upon the court.

Consideration has been given to the possible effect upon the legislation already referred to of the City-County Consolidation Amendment to the Constitution, the Home Rule Charter Act, the Home Rule Charter itself, and cases bearing upon such legislation in the Supreme Court, particularly the case of Lennox et al. v. Clark et al., 372 Pa. 355.

While we feel that reliance need not necessarily be placed upon this later legislation in order to justify the granting of the prayer of this petition, serious consideration should be given to it, since it is persuasive of the general purpose and intent of its enactments as expressing the desire of the electorate of Philadelphia to provide for city-county consolidation and home rule. Especially, we should give consideration to the intent of the city charter itself, where, by section 5-700, the department of welfare is empowered and charged with the duty to "receive, care for and place dependent, mentally defective, including incorrigible and delinquent children" and to "investigate the manner in which they are being cared for", and providing that "the department shall approve or disapprove all bills rendered to the city . . . for the care of children . . . " and also to transmit to the department of collections, for collection, all accounts due to the city for expenditures made by it for the care and placement of children.

This would seem to follow the pattern of integration of former county functions into the structure of the city government.

However, we note that His Honor Chief Justice Stern, in the Lennox case, supra, observed that:

"Since clause (7) of the city-county consolidation amendment provides that the county officers are to continue, now as city officers, to perform their duties

'until the General Assembly shall otherwise provide', it would seem that any proposed reorganizations, re-groupings, . . . or mergers, of the former County offices, designed the more advantageously to incorporate their functions into the existing municipal structure, must wait upon action by the General Assembly".

If we are to regard the end sought by the prayer of the petition before us as a reorganization, regrouping or merger of the functions of the former children's agents with the staff of the present department of welfare then, as suggested, this could not be done at once, but would have to "wait upon action by the General Assembly" which, at this time, has not been taken.

However, since we have taken the view that the County Institution District Law and The Juvenile Court Act as amended in 1947, give sufficient warrant to us to grant the prayer of the petition and, since, also, the later legislation is not in any way in conflict with that existing legislation, the purpose of this later legislation serves rather to emphasize the course which should be followed in the future.

There remains the practical question of when this change should become effective. Respondents in this respect suggest that if we grant the prayer of petitioner, "the court (should) fix a transitionary period of no less than 90 days for the transferring of our functions and integration of this agency into the appropriate city agencies". We agree with this suggestion.

This court is familiar with the details of the imposition of support orders in the premises and also the enforcement thereof. Respondents have, in the children's agents department, a staff of 31 persons. A reasonable time must be given to petitioner to perfect a unit in the department of welfare to take the place of the children's agents. Whether this unit shall be

composed of all or some of the present personnel of the children's agents or an entirely new staff must be decided by the commissioner of welfare.

However, the change should not be actually made until the commissioner of welfare has set up such a unit, ready to take over the duties of the children's agents, so that there shall be no interruption in the enforcement of the court's orders. This change-over obviously cannot be accomplished forthwith. A reasonable time, as we have stated, must be allowed. The court feels that such a reasonable time for the change to take effect would be September 1, 1953.

We, therefore, make the following order:

And now, April 17, 1953, it is ordered that:

1. On or before September 1, 1953, all powers, functions, duties and obligations, in any manner concerning the support and maintenance generally of any child or children then being exercised and performed by the city (formerly county) commisioners, shall be exercised and performed exclusively by the Department of Public Welfare of the City of Philadelphia.

2. On and after September 1, 1953, all orders of the municipal court for the support, maintenance and care of any child or children committed by the court shall be made against the Department of Public Welfare of the City of Philadelphia.

3. On and after September 1, 1953, all orders of the municipal court against parents or other persons responsible for the support, maintenance and care of any child or children committed by the court, for reimbursement, shall be made payable to the Department of Public Welfare of the City of Philadelphia.

4. All existing orders of the municipal court made against the County of Philadelphia, for the support, maintenance and care of any child or children committed by the court, are hereby amended so that, as of September 1, 1953, and thereafter, such orders shall

be against the Department of Public Welfare of the City of Philadelphia.

5. All existing orders of the municipal court, made against parents or other persons responsible for support, maintenance and care of any child or children committed by the court, to reimburse the County of Philadelphia for such support, maintenance and care, are hereby amended so that as of September 1, 1953, and thereafter, such orders shall be to reimburse the Department of Welfare of the City of Philadelphia.